Matter of the Probate of the Last Will and Testament of MARTHA SHAUL, Deceased. OTIS H. DECK, Contestant, Appellant; EUNICE EDICK, Respondent.

(Supreme Court, Third Department, September 10, 1913.)

WILL—UNDUE INFLUENCE—LACK OF TESTAMENTARY CAPACITY—EVIDENCE.
   A testatrix being in ill health and living alone with her mother, who was an invalid, made her will about a week before her death, leaving all her property to a woman who had cared for her and her mother, and to whose house she and her mother had removed just before her death, and a few weeks before her mother's death. The testatrix had no children and left surviving her only uncles, aunts and cousins with whom she had not been very friendly and who now contest the validity

of her will.  Evidence examined, and *held*, insufficient to establish undue influence or lack of testamentary capacity, and that a decree admitting the will to probate should be sustained.

KELLOGG and WOODWARD, JJ., dissented, with opinion.

APPEAL by Otis H. Deck, contestant, from a decree of the Surrogate's Court of Otsego county, entered in said Surrogate's Court on the 5th day of February, 1912, admitting the proposed will to probate and decreeing that the testatrix was of sound mind and memory and free from undue influence.

Snyder, Cristman & Earl [A. M. Mills of counsel], for the appellant.

Byard & Van Horne [O. L. Van Horne of counsel], for the respondent.

HOWARD, J.—Martha Shaul died September 1, 1910.  Before she died, and on August 24, 1910, she is said to have executed a will.  The will was prepared by Orange L. Van Horne, a lawyer of Otsego county and the district attorney of that county.  At the time of the alleged execution of the will the decedent and her mother, aged seventy-five years, lived alone. The mother was an invalid; the decedent was in ill health. They called in a married neighbor woman, one Eunice Edick, to assist them with their work and help nurse and care for them.  She was paid for this work.  The decedent was a maiden lady; she had never married.  She had no children and left surviving her only uncles, aunts and cousins.  She had not been very intimate or friendly with most of these.  Just before she died she and her mother went to the house of Eunice Edick to live.  In her will she left all her property to Mrs. Edick.  The will is contested by those relatives who would inherit if there were no will.  The surrogate has decided in favor of the validity of the will, and an appeal from his decree brings the case into this court.

There are only two questions for our consideration, namely,

Was there undue influence? Did the decedent possess testamentary capacity? As to the first question there is absolutely no proof in the case of the exercise of undue influence. There was opportunity, and there was a quasi-confidential relation. This is all that can be said; this is not enough. Mrs. Edick was a married woman, a neighbor, a friend. She did as neighbor women frequently do under such circumstances, she took such care of the two invalid women as she could and did the housework. She took pay for her services. Finally, being pressed by her own domestic duties, she took the two old women to her own house and cared for them there till they died. These acts, so far as the proof goes, comprise the "head and front of her offending." No will was ever invalidated for such reasons —no will ever should be.

As to the testamentary capacity the contestant produced quite an array of experts and interested relatives, and some others. From it all, as one reads the testimony, it would seem at times as though the woman were a complete imbecile in the last stages of *senile dementia;* and then, again, out of the mouths of the same witnesses, perhaps, she would appear to display a cunning and business capacity quite uncommon. But the surrogate saw all these witnesses, he heard them testify, he knows them all. He decided against them and his careful analysis of the facts in his able opinion shows that he was fully warranted in so doing.

Despite the attack upon Mr. Van Horne, I have no doubt that the surrogate was influenced greatly by his testimony. I have been so influenced in the conclusion which I have reached. It would have been better, perhaps, had Mr. Van Horne employed other counsel to conduct this litigation and acted himself only in the capacity of witness; but notwithstanding his indiscretion, if it was indiscreet, in acting both as witness and lawyer, I attach great importance to his testimony. He is not one of those familiar legal characters whose shady reputa-

tion always arouses suspicion.    On the other hand, Mr. Van
Horne is a young man apparently of high standing in his com-
munity; he is a lawyer of excellent reputation; he is the dis-
trict attorney of his county.    He argues cases before us and
we have had an opportunity to observe him.    He seems to me
to be clean and able and straightforward; I think we should
hesitate to repudiate him.

Every will case must stand upon its own peculiar circum-
stances, but in this case I do not think we should strain a point
to take this money away from Mrs. Edick, the only person who
displayed any human compassion towards the deceased, and
give it to unworthy relatives.    Courts can have but little
respect for the claims of distant relatives who remain wholly
unconcerned about the comfort and affairs of their kinsmen
while they are alive, but pounce like vultures upon their estates
when they are dead.    Neither should the law encourage their
claims—at least not to the jeopardy of those who merit grati-
tude and reward at the hands of the deceased.

I recommend that the decree be sustained on the opinion of
the surrogate.

All concurred, except KELLOGG, J., dissenting in opinion, in
which WOODWARD, J., concurred.

KELLOGG, J. (dissenting) :—The learned surrogate did not
give sufficient attention to the fact that when the will was made
the testatrix was entirely under the control of the residuary
legatee.    Ordinarily an attorney, a physician or a nurse who
obtains a will in his favor is called upon to show that the will
is not the will of the beneficiary but that of the alleged testator.
The mere formal execution of such a will is not sufficient.    All
the physicians, three in number, swear that the testatrix was
incompetent.    She was about fifty-two years of age and resided
upon the old homestead with her father and mother.    The
father died April 20, 1910; the mother was very feeble, seventy-

upon the old homestead with her father and mother.  The father died April 20, 1910; the mother was very feeble, seventy-five years of age, and required constant care.  After the father's death she was melancholy and in a failing condition.  The beneficiary came to the homestead as nurse June tenth; the will was made August twentieth, and on August twenty-seventh the beneficiary removed the decedent and her mother from the old homestead to her house.  Decedent died there September first.  The mother died September twenty-third.  No particular relations are shown between the beneficiary and the decedent except that the beneficiary was in the family as nurse for a few days prior to the making of the will, and performed her duty to the satisfaction of the employer.  But she was paid for doing that, and such service is no good reason in itself why she should be sole beneficiary under the will.

The attorney who drew the will witnessed it and appeared in Surrogate's Court and in this court in its defense, and, therefore, has an interest in the litigation.  He swears that Martha Shaul gave him the directions for making the will, but that he received the directions and made the will in the presence of the beneficiary.  He did not see the mother, who was in the house.  Other relatives lived in the vicinity.  As he entered the house he spoke to one of the relatives who was at work upon the farm.  He does not seem to have exercised the care that would naturally be expected under all the circumstances of this will.  The family physician could very properly have been called as a witness.  Aside from the confidential relations between the alleged testatrix and the beneficiary there is grave question as to the competency of the testatrix.  Her feebleness of mind and body, in connection with the relations existing, throws a great doubt upon the validity of the will.  The fact that she permitted herself and her mother to be removed from the old homestead by the nurse so shortly after the death of the father is quite strong evidence that the mind of the nurse was the controlling mind.

the evidence and a new trial before a jury directed, with costs to the appellant to abide the event.

WOODWARD, J., concurred.

Decree of surrogate affirmed, with costs.